UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOHN COLLINS, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:17-CV-3572 |
| § | |
| BNSF RAILWAY COMPANY, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Before the Court are Defendant BNSF Railway Company's Motions to Exclude or Limit Expert Testimony and for Summary Judgment. (Doc. Nos. 27, 29). Defendant argues that Plaintiff John Collins' expert witnesses must be excluded under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and that Plaintiff has not provided admissible evidence of causation or negligence as required for a Federal Employers Liability Act ("FELA") claim. After considering Defendant's Motions and all applicable law, the Court determines that Defendant's Motions must be **GRANTED**.

I. **BACKGROUND**

Plaintiff worked for Defendant as a brakeman, conductor, and engineer from 1997 to 2011. (Doc. No. 8 ¶ 4). He alleges that, during the course of his employment, he was "exposed to various toxic substances and carcinogens including but not limited to chemicals, solvents, diesel/exhaust, benzene, heavy metals, creosote, manganese and rock/mineral dust and fibers." (Doc. No. 8 ¶ 5). Plaintiff has filed suit against Defendant under FELA. Plaintiff alleges that Defendant was negligent in exposing him to these

1

substances and that he developed colon and then liver cancer as a result. (Doc. No. 8 ¶¶ 6-9). In particular, Plaintiff alleges that Defendant did not have locomotives with adequate ventilation and air filtration systems, did not install proper engine exhaust filters, utilize low emissions fuel, or require cleaner burning engines. (Doc. No. 8 ¶ 12). Defendant denies that it was negligent or that Plaintiff's exposure, if any, was a cause of Plaintiff's cancer. (Doc. No. 16 ¶ 14).

Defendant moves for summary judgment and to exclude or limit the testimony of Plaintiff's experts, Dr. Evan Roy Berger and Dr. Michael Ellenbecker. (Doc. Nos. 27, 29). In a hearing on January 14, 2019, the Court granted Defendant's motion to exclude Dr. Ellenbecker's late-produced report. Dr. Berger is Plaintiff's causation expert. Defendant argues that he should not be permitted to testify because he "reaches a 'causation' opinion using a methodology he made up himself, one that is unknown to science.' (Doc. No. 29, at 7).

## II. LEGAL STANDARD

A. Admission of Expert Testimony

Under Federal Rule of Evidence 702, an expert witness may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert*, the Supreme Court held that, in deciding whether expert testimony is reliable, the court should consider four non-exhaustive factors: 1) whether the scientific theory or

technique has been tested; 2) whether the theory of technique has been subjected to peer review and publication; 3) the known or potential rate of error and the existence and maintenance of standards controlling the use of the technique; and 4) the general acceptance of the theory or technique. 509 U.S. at 593-94.

B.    Summary Judgment

Under Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In a FELA case the plaintiff's burden of proof is 'featherweight' and '[o]ur precedents clearly establish that in this Circuit, a judgment as a matter of law against the plaintiff in a FELA suit is appropriate only where there is a complete absence of probative facts supporting the plaintiff's position." *Howard v. Canadian Nat'l/Illinois Cent. R.R.*, 233 F. App'x 356, 357 (5th Cir. 2007) (quoting *Rivera v. Union Pac. R.R. Co.*, 378 F.3d 502, 506 (5th Cir. 2004)).

**III.   ANALYSIS**

A.    The FELA

Under the FELA, a railroad "shall be liable in damages to any person suffering injury while he is employed by such carrier in [interstate] commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or

employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars . . . or other equipment." 45 U.S.C. § 51. "A railroad is charged with providing a reasonably safe work environment for its employees. Negligence within the meaning of FELA exists if the defendant railroad knew, or by the exercise of due care should have known that its conduct was inadequate to protect [the plaintiff] and similarly situated employees." *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 417 (5th Cir. 2012) (internal citation and quotation marks omitted). "The standard of care for both the employer and employee under FELA is one of ordinary prudence under the circumstances." *Id.* at 418. For causation under the FELA, "[i]f negligence is proved . . . and is shown to have played any part, even the slightest, in producing the injury, then the carrier is answerable in damages." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703-04 (2011) (internal citations, quotation marks, and emphasis omitted). Accordingly, under the FELA a plaintiff has a low burden on causation.

B. <u>Defendant's Motion to Exclude or Limit Dr. Berger's Testimony</u>

Dr. Berger is Plaintiff's causation expert. He is a medical doctor board certified in internal medicine, hematology, and medical oncology. (Doc. No. 31, at 811). Dr. Berger concluded that Plaintiff's exposure to diesel fumes exhaust and asbestos was a contributing factor in the development of his colon cancer. (Doc. No. 31, at 818). Defendant argues that Dr. Berger's testimony should not be admitted because: 1) he did not identify or rely on studies that establish that there is a causal connection between exposure to the relevant chemicals and colon cancer; 2) his methodology is not generally accepted by the scientific

4

community; 3) his theories have not been subjected to peer review; and 4) his opinions are not based on sufficient facts or data. (Doc. No. 30, at 8-16).

Dr. Berger appears to have reached his general causation opinion, namely, that diesel exhaust and asbestos can cause colon cancer, primarily based on a literature review. In his report, Berger stated that: "It is very clear from numerous articles listed in the bibliography to this letter that there is direct evidence that is accepted by many members of the medical and scientific communities that benzene and other poly-aromatic hydrocarbons are present in diesel smoke. Furthermore it has been shown that these substances are known to be carcinogens that are linked to the causation of adenocarcinoma of the colon." (Doc. No. 31, at 817). He also stated that "[t]he Scientific/Technical Advisory Committee to the Sept. 11, 2001 WTC terror attack, listed benzene as a Level 1 toxin, which is the highest correlation with cancer that they have in their recommendations." (Doc. No. 31, at 817). In his deposition, Dr. Berger confirmed that he primarily looks at the literature to determine whether a substance can cause a particular medical condition. (Doc. No. 31, at 304).

However, Dr. Berger also acknowledged that none of the articles that he reviewed definitively states that exposure to diesel exhaust and/or asbestos cause colon cancer:

> Q: With regard to diesel exhaust, is it fair to say that as we sit here today, diesel exhaust has not been established as a cause of colon cancer?
> . . .
> A: It is associated with colon cancer. But it has not been proven to be a cause.
> . . .
> Q: [C]an you point to any publication in your bibliography that

> finds that asbestos causes colon cancer?
>
> A: No.

(Doc. No. 31, 271-72). Rather, he could state only that diesel exhaust and asbestos are *associated* with colon cancer. (Doc. No. 31, at 271-73). But association and causation are distinct. *See Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 379 (5th Cir. 2010) (holding that expert testimony on causation was inadmissible where the studies on which the expert relies only established association); *Anderson v. Bristol Myers Squibb Co.*, No. Civ. A. H-95-0003, 1998 WL 35178199, at *11-12 (S.D. Tex. Apr. 20, 1998) (noting that the fact that studies are scientifically valid for an association determination does not mean that they are scientifically valid for a causation determination). It appears that Dr. Berger used his own methodology to derive a causation conclusion from the studies on association. This methodology seems to consist of applying three factors (dose response, consistency of findings, and strength of association) to the literature on association to decide whether the study also makes a conclusion on causation. (Doc. No. 30, at 306).

Neither Dr. Berger nor Plaintiff has shown that this kind of methodology is accepted in the scientific community. Indeed, Dr. Berger acknowledged as much in his deposition: "I can't tell you where [this methodology] would be published. It's my use of those factors that help me make a decision." (Doc. No. 31, at 306). Nor does it appear that Dr. Berger's ultimate conclusion on general causation has itself been subjected to peer review. Again, neither Dr. Berger nor Plaintiff has pointed to any studies confirming his opinion that asbestos and/or components of diesel fuel can actually cause colon cancer. Nor has Dr.

Berger himself been a part of any such studies.

Plaintiff has argued that, in addition to a literature review for general causation, Dr. Berger employed a "differential diagnosis/etiology" methodology to establish specific causation. (Doc. No. 33, at 21-23). Although differential diagnosis is generally an accepted approach, Dr. Berger did not explain what his own methodology consisted of in his deposition. The most that he said is that he "tried" to rule out causes and that he thought that Plaintiff's obesity was also a risk factor that was related to his development of colon cancer. (Doc. No. 31, at 278). Dr. Berger acknowledged that he did not have information about Plaintiff's other behavioral and lifestyle factors, such as diet and activity levels. (Doc. No. 31, at 278-80).

To the extent that Dr. Berger did perform a differential diagnosis, the primary problem is that neither he nor Plaintiff has pointed to any scientific evidence establishing that exposure to diesel exhaust or asbestos can cause colon cancer. Therefore, Dr. Berger could not have landed on exposure to these substances as a cause of Plaintiff's cancer through a differential diagnosis methodology. *See Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999) ("The underlying predicates of any cause-and-effect medical testimony are that medical science understands the physiological process by which a particular disease or syndrome develops and knows what factors cause the process occur. . . . Absent these critical scientific predicates, for which there is no proof in the record, no scientifically reliable conclusion on causation can be drawn."). Here, since there is no valid scientific conclusion that exposure to diesel exhaust and/or asbestos causes colon cancer in general,

7

Dr. Berger cannot have made a scientifically reliable conclusion that they caused Plaintiff's colon cancer. Accordingly, Dr. Berger's testimony does not meet the *Daubert* standard and is inadmissible.

C.  Defendant's Motion for Summary Judgment

Since the Court has granted Defendant's Motion to Exclude the Testimony of Plaintiff's Experts (Doc. No. 29), the Court must also grant Defendant's Motion for Summary Judgment. Plaintiff has not offered any evidence on causation separate from Dr. Berger's testimony and report. To survive summary judgment, Plaintiff must have some admissible evidence on causation, even though Plaintiff's burden on causation is lower in FELA cases. *See, e.g.*, *Huffman*, 675 F.3d at 426 (noting that "[j]urors still may not simply guess," even though the plaintiff's causation burden is low in an FELA case and holding that "[t]he path from worker injury to employer liability was too broken in this record to allow juror common sense to travel it" where there was no evidence that the plaintiff's injury could result from the employer's alleged negligence). Nor has Plaintiff demonstrated that there is a factual dispute about Defendant's negligence without Dr. Ellenbecker's late-produced report. There is no direct evidence of Plaintiff's exposure to chemicals at all, let alone any unreasonable exposure. Nor is there any evidence that Defendant did not take reasonable measures to protect Plaintiff. Accordingly, Plaintiff has not demonstrated that there are any factual disputes preventing summary judgment.

## IV. CONCLUSION

The Court has the utmost sympathy for Plaintiff and does not doubt that he is absolutely sincere in his arguments to this Court. But pertinent evidentiary standards are clear and Plaintiff does not meet them. For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Exclude or Limit the Testimony of Plaintiff's Experts. The Court also **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 5th day of March, 2019.

*[signature]*

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE